```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF GEORGIA
                       ATLANTA DIVISION

UNITED STATES OF AMERICA       :       CRIMINAL ACTION
                               :
           v.                  :       No. 1:09-CR-454-CAP-ECS-5
                               :
GERARDO RODRIGUEZ SALGADO      :
```

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This matter is before the Court on Defendant's motion to suppress. [Doc. 91]. An evidentiary hearing was held on the motion on March 12, 2010. [Doc. 100]. Defendant filed a post-hearing brief on March 22, 2010, [Doc. 103], and the government timely responded. [Doc. 118]. Defendant failed to file a reply brief within the time allowed. The motion to suppress is now fully briefed and ready for decision.

**I.**
**Background**

On October 21, 2009, James C. Barnes, an agent with the Drug Enforcement Administration ("DEA"), traveled to 137 Town Park, Lawrenceville, Georgia, to execute an arrest warrant for Defendant Gerardo Rodriguez-Salgado on the charges of conspiracy to distribute a controlled substance and possession with intent to

distribute a controlled substance. Transcript of March 12, 2010, Suppression Hearing at 7-8;[1] [Doc. 1].

While there were "at least a dozen" agents at the scene with Agent Barnes, he approached the Defendant's door with only one other agent, DEA Agent Bemish. (T. 10-11). At the time they approached Defendant's door, both agents had their weapons drawn at the "low ready" position. (T. 9-10, 22). After arriving at Defendant's apartment, Agent Barnes knocked on the door and Defendant appeared "a few moments" later in his underwear, a white tank top, and a pink "sleeping blindfold." (T. 9, 11, 16, 22). Agent Barnes identified himself and requested that Defendant open the door. (T. 9). Defendant opened the door, and was immediately handcuffed. (T. 11). Once the Defendant was secured, he informed the agents that his wife and child were in the master bedroom. (T. 11). Agent Barnes and Agent Bemish holstered their weapons while a "handful" of other agents performed "an initial sweep of the residence . . . to make sure everybody is accounted for." (T. 11).

After the sweep was completed, one or two agents stayed with Defendant's wife and child while Agent Barnes escorted Defendant to a second bedroom and read him his <u>Miranda</u> rights. (T. 12). Agent Barnes testified that Defendant "indicated that he understood those

---

[1] References to the March 12, 2010, transcript will be cited as "(T. Page Number)."

2

rights and agreed to speak with me." (T. 12). Agent Barnes asked Defendant whether "there was anything illegal in the house, specifically drugs, weapons, firearms particularly, or large amounts of American currency." (T. 14). The Defendant answered this question in the negative and gave the agents permission to search the residence for any of the items. (T. 14). While the agents conducted a search of the apartment, Agent Barnes continued to question the Defendant, asking him questions about the drug investigation. (T. 14-15). Agent Barnes testified that the answers were "consistent" with the questions, and that it appeared Defendant understood the questions asked. (T. 15).

At some point during the interview Agent Barnes escorted Defendant to the master bedroom and asked him to identify clothes he could wear. (T. 17-18). Defendant identified a pair of pants on the floor, which the agents searched before handing them to him. (T. 18). The search of the pants disclosed a wallet, a passport, and a cellular phone. (T. 18). The agents went through the wallet. Id. At approximately the same time, Agent Barnes took out the cell phone and "flipped it open to try to identify the number assigned to that phone . . . ." (T.18).[2] The cellular phone was

---

[2] On re-direct Agent Barnes testified that he opened the phone to ensure that it was not a weapon. (T. 25-26). Agent Barnes also testified on re-direct that cellular phone data may be altered or erased remotely. (T. 26).

3

then given to an intelligence analyst to record the numbers that were stored in the phone. (T. 18).

## II.
## Discussion

In his motion to suppress Defendant argues that the search of the cellular phone was unconstitutional because it was not conducted pursuant to a warrant, consent, or a warrant exception. [Doc. 103]. In response, the government argues that the cellular phone was searched incident to the Defendant's arrest, that the Defendant consented to the search, and that exigent circumstances supported the recording of the data on the phone. [Doc. 118]. Because the undersigned concludes that the seizure of the phone was incident to a lawful arrest and that the search of the data was supported by exigent circumstances, this Court will not address the issue of consent.

**A. Was the search of Defendant's pants a search incident to arrest?**

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures . . . ." U.S. Const. Amend. IV. In this regard, warrantless searches "are *per se* unreasonable under the Fourth Amendment, subject only to a few specifically established and well delineated exceptions." Katz v. U.S., 389 U.S. 357, 357 (1967).

4

> Of relevance here, the Supreme Court has held that:
>
> It is well settled that a search incident to a lawful arrest is a traditional exception to the warrant requirement of the Fourth Amendment. This general exception has historically been formulated into two distinct propositions. The first is that a search may be made of the person of the arrestee by virtue of the lawful arrest. The second is that a search may be made of the area within the control of the arrestee.

U.S. v. Robinson, 414 U.S. 218, 224 (1973). Under this principle, "[t]here is ample justification . . . for a search of the arrestee's person and the area 'within his immediate control'- construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." Chimel v. California, 395 U.S. 752, 763 (1969).

Here, the government cites to U.S. v. Ricks, 817 F.2d 692 (11th Cir. 1987), arguing that "[t]he search of the Defendant's pants after his arrest was authorized under the search incident to arrest doctrine." [Doc. 118, at 7]. In Ricks, the Defendant, after a lawful arrest, was asked whether he wanted to put on a jacket. Ricks, 817 F.2d at 694. When the Defendant answered affirmatively, the arresting agents searched the jacket and found a number of pieces of paper with the names, telephone numbers, and addresses of two men indicted as co-defendants. Id. at 694-95.

Citing to the "grab area" holding of Chimel, the Eleventh Circuit held that the jacket became subject to a legitimate search

5

when the agent handed it to Ricks, thus placing it within Rick's "grab area." Ricks, 817 F.2d at 696. Based on this conclusion, the Ricks court concluded that the search of the jacket was a search incident to a lawful arrest. Id.

The undersigned finds the holding of Ricks controlling. While the pants were not initially in Defendant's "grab area" at the time of his arrest, they entered the searchable zone when Defendant was led into the bedroom to dress and indicated that he wanted to wear the pants on the floor. See Id. Certainly the officers were authorized to check the pants "incident to arrest" before they gave them to Defendant to put on. Under these circumstances, the search of the pants and the seizure of the cell phone were both justified by the search incident to arrest exception. Id.; cf., Arizona v. Gant, 129 S.Ct. 1710, 1723 (2009) ("[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is *within reaching distance* of the passenger compartment at the time of the search or if it is reasonable to believe the vehicle contains evidence of the offense of arrest.") (emphasis added). Having reached this conclusion, the question becomes whether the subsequent warrantless search of the information on the cellular phone violated Defendant's Fourth Amendment rights.

6

**B. Was the search of the cellular phone data constitutional?**

Even if an item is validly seized during a search incident to a lawful arrest, a subsequent search of the item may violate the Fourth Amendment's Warrant Clause. U.S. v. Chadwick, 433 U.S. 1, 15 (1977); U.S. v. Johnson, 588 F.2d 147, 151 (11th Cir. 1979). In Johnson, police officers seized luggage from a defendant during a search incident to a lawful arrest. Id. Approximately 45 minutes after the arrest, the officers opened the luggage and searched through the contents. Id. The Eleventh Circuit held that the search of the luggage was unconstitutional, because "[o]nce personal property of an arrestee has been reduced to the 'exclusive control' of the arresting officers, an immediate search is no longer necessary or permissible.' " Id. However, the court noted that "where the facts support a finding of exigency, immediate warrantless searches upon probable cause will be upheld." Id. at 151 n. 5; see also, Chimel, 395 U.S. at 763 ("it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or *destruction.*") (emphasis added).

As an initial matter, courts have consistently found probable cause to search cell phones seized in connection with drug related arrests. U.S. v. Quintana, 594 F.Supp.2d 1291, 1299 (M.D. Fla. 2009) (collecting cases). In so holding, "courts recognize[] that

the devices may have been used to communicate with others participating in . . . drug-trafficking [and, c]onsequently, there [is] a reasonable probability that information stored on the device [will lead to] evidence of the arrestee's crime." Id. (Quoting U.S. v. Finley, 477 F.3d 250, 260 (5th Cir. 2007).  Likewise, in this case the officers had probable cause to search Defendant's cellular phone.  Id.

Moving to the exigency of the search, the government argues that "[t]he search of the contents of the seized phone and the analysis of the data therein were required by exigent circumstances," thus excusing them from obtaining a search warrant. [Doc. 118, at 13].  In support of this proposition, the government points to Agent Barnes' testimony that cellular phone data may be "wiped" remotely, arguing that the info on the phone could have been erased, altered, or deleted before the officers could obtain a warrant.  The government also cites to three cases which upheld the search of cellular phone data.  In U.S. v. Young, 278 Fed. Appx. 242 at *3 (4th Cir. 2008), the Fourth Circuit upheld the accessing and copying of text messages from a phone during a search incident to an arrest "based upon . . . the manifest need of the officers to preserve evidence . . ."  Similarly, in Finley, 477 F.3d at 260, the Fifth Circuit, noting that "[t]he permissible scope of a search incident to a lawful arrest extends to containers found on the

arrestee's person," declined to suppress text messages and call records obtained during a warrantless search of a cell phone incident to a lawful arrest. Finally, in U.S. v. Zamora, 2006 WL 418390 (N.D. Ga. 2006), District Judge Duffey concluded that the "legitimate concerns" of losing the data from the cell phones created "exigent circumstances [which] authorized the seizure of the cell phones and the search of their electronic contents." Zamora, 2006 WL 418390 at *4-5 ("With each call is the risk that a number stored would be deleted, including the loss of calls made to or from the instrument . . .").[3]

    Upon consideration of the foregoing authority, the undersigned concludes that the search of the cellular phone data was supported by exigent circumstances. At the time the cellular phone came into Agent Barnes' possession the data on the phone could have been altered, erased, or deleted remotely. (T. 26); see also Valdez, 2008 WL 360548 at *1-3 (upholding search of cellular phone where police officer testified "that [a cellular company] enables customers to remotely delete all of the information contained on their phones, including the call history and address book."). Thus, unlike the luggage in Johnson, the cellular phone, while in Agent

---

[3] In addition to the cases cited by the government, this Court notes that "numerous other courts have upheld the search of cell phones for similar information." U.S. v. Valdez, 2008 WL 360548 at *2 (E.D. Wis. 2008) (collecting cases).

9

Barnes' possession, was not in his "exclusive control," as it could potentially have been compromised by remote access. Therefore, Defendant's motion to suppress the results of the search of the cellular phone should be **DENIED**.[4]

## IV.
## Conclusion

In conclusion, after careful consideration of the arguments of counsel and the evidentiary record, the undersigned **RECOMMENDS** that Defendant's motion to suppress, [Doc. 91], be **DENIED**.

It appearing that there are no further pretrial or discovery matters to bring before the undersigned, it is therefore **ORDERED** that this **CASE** be and is hereby **CERTIFIED** as ready for trial.

**SO REPORTED AND RECOMMENDED,** this 15th day of June, 2010.

---

[4] In his brief, Defendant cites two opinions in which searches of cellular phone data during an arrest were suppressed. [Doc. 103, at 3]. However, the undersigned finds the two cases unpersuasive. In State v. Smith, 920 N.E. 2d 949, 955 (Ohio 2009), the Ohio Supreme Court, recognizing "that the justifications behind allowing a search incident to arrest are officer safety and the preservation of evidence," suppressed the results of a cellular phone search because "[t]here is no evidence that either justification was present in this case." Defendant also relies on U.S. v. Wall, 2008 WL 5381412 at *3-4 (S.D. Fla. 2008), in which the district judge reached a similar conclusion to Smith in holding that the search of the cellular phone data did not implicate either of the justifications for a search incident to an arrest. However, it does not appear that the court, in either case, considered the fact that the data on the cellular phone could be remotely accessed and deleted, thus mandating the immediate preservation of that evidence.

AO 72A
(Rev.8/82)

*S/ E. Clayton Scofield III*
E. Clayton Scofield III
UNITED STATES MAGISTRATE JUDGE